(April 14, 2016)

■ Sara Hunter Hudson et al., Appellants, et al., Plaintiff, v Merrill Lynch & Co., Inc., et al., Respondents. [31 NYS3d 3]—

Order, Supreme Court, New York County (Cynthia S. Kern, J.), entered April 23, 2014, which granted defendants' motion for summary judgment dismissing the complaint asserting gender discrimination under the New York City Human Rights Law, unanimously affirmed, without costs.

In 2008 and early 2009, plaintiffs Sara Hunter Hudson and Julia Kuo were enrolled in a financial advisor training program at the Fifth Avenue branch of defendant Merrill Lynch, Pierce, Fenner & Smith, Inc. The training program consisted of three phases of development. The first was the Trainee Period, which lasted up to 17 weeks. During this phase, the trainees were required to pass licensing exams and an initial developmental assessment. Upon completion of the Trainee Period, the

trainees received a production number, which allowed them to bring in business, and entered the next phase, known as Stage I.

In Stage I, the trainees were required to complete a financial planning course and pass a second developmental assessment. After three months in Stage I, successful trainees moved on to Stage II, the core production phase, where they had to complete further course work and pass additional developmental assessments. In both Stages I and II, the trainees were expected to satisfy various objective performance hurdles measured by the business the trainees brought in. After 36 months in Stage II, successful trainees were deemed to have completed the training program.

In late 2008, the U.S. financial sector suffered a severe collapse. In mid-January 2009, Merrill Lynch senior management notified its branch offices that there would be a reduction in force in the trainee program, and directed the Fifth Avenue branch to lay off half of its approximately 29 trainees. Merrill Lynch management provided the Fifth Avenue branch with two lists. The first was denominated the "termination list" with "no exceptions." It was a computer-generated list of Stage II trainees (and trainees in a similar training program) having at least three performance months who were off-target as of December 2008, and who were also off-target for more than 50% of that year. The second list consisted of all trainees in the Trainee Period and Stage I, and recommended that those not meeting performance targets be "strongly considered for termination." Hudson and Kuo were not on either list.

The Fifth Avenue branch was notified of the reduction in force on Friday, January 16, 2009, and was required to submit its proposed termination list by Tuesday, January 20. Working over the Martin Luther King Day weekend, Joel Meshel and Anna Roccanova, the principal Merrill Lynch decision makers, prepared the termination list. Meshel and Roccanova used the following methodology in making their decisions. They started with the first list, which contained seven men and two women. After consultation with Traci Kamil, Merrill Lynch's regional human resources director, and Sabina McCarthy, the regional managing director, Meshel and Roccanova removed three men from that list due to extenuating circumstances.[1] The four remaining trainees on the list were chosen for termination: two men and two women, plaintiff Catherine Wharton, and Jennifer Vuona.

---

1. Although two other male trainees were also removed from the list, plaintiffs concede that the circumstances surrounding these men are not probative.

Branch management was given discretion in selecting the other trainees who would be laid off. In deciding whom next to include for termination, Meshel and Roccanova turned to the other Stage II trainees. In order to compare trainees with similar experience, Meshel and Roccanova divided them into two groups based on their time in the program. The first group consisted of five trainees, four men and Kuo, who had six or more months length of service in Stage II. Kuo, who had the worst record in the group based upon the objective performance standards, was chosen for termination. The second group of Stage II trainees consisted of two men, Hudson, and another woman, each with one to three months length of service in Stage II. From this group, Hudson, who objectively was the weakest performer, was laid off.

The remaining trainees who were laid off came from the second list provided to branch management, which included the 12 trainees in the Trainee Period and Stage I. Of this group, seven were chosen for termination, four men and three women. Two of these trainees were specifically identified on the list as having not met performance targets. Because of limited performance data, the remaining five layoff decisions were based on which trainees, in Meshel's and Roccanova's estimation, would be most likely to succeed. At the end of the process, Meshel and Roccanova presented their layoff recommendations to Linda Houston, the branch director. After reviewing the methodology, and the business reasons behind the recommendations, Houston approved the termination list, and those trainees were subsequently let go.

In September 2010, the three plaintiffs in this action (Hudson, Kuo, and Wharton), along with Vuona, filed a complaint against Merrill Lynch and related entities in the U.S. District Court for the Southern District of New York. In the federal complaint, the plaintiffs alleged, inter alia, that Merrill Lynch unlawfully terminated their employment on the basis of gender, in violation of title VII of the Civil Rights Act of 1964 (42 USC § 2000e *et seq.*), and New York State and New York City Human Rights Laws (Executive Law § 290 *et seq.*; Administrative Code of City of NY § 8-107 *et seq.*). Following extensive discovery, the defendants in the federal action moved for summary judgment dismissing the complaint. In a decision dated January 24, 2013, the federal court granted the motion with respect to the plaintiffs' federal and state law claims. The court declined to exercise supplemental jurisdiction over the plaintiffs' City Human Rights Law claims, and dismissed them without prejudice.

In July 2013, Hudson, Kuo, and Wharton commenced the instant action against Merrill Lynch and the related entities asserting a single cause of action for gender discrimination in violation of the City Human Rights Law.[2] Defendants moved for summary judgment dismissing the complaint, and in a decision entered April 23, 2014, the motion court granted the motion. Plaintiffs Hudson and Kuo (hereinafter plaintiffs) appeal, and we now affirm.[3]

Even though the federal court dismissed plaintiffs' federal and state gender discrimination claims, the viability of plaintiffs' City Human Rights Law claim must be independently assessed under more liberal standards (*Williams v New York City Hous. Auth.*, 61 AD3d 62, 66 [1st Dept 2009], *lv denied* 13 NY3d 702 [2009] [the City Human Rights Law "explicitly requires an independent liberal construction analysis in all circumstances, even where state and federal civil rights laws have comparable language"]). A motion for summary judgment dismissing a City Human Rights Law claim can be granted "only if the defendant demonstrates that it is entitled to summary judgment under both [the *McDonnell Douglas* burden-shifting framework (*McDonnell Douglas Corp. v Green*, 411 US 792 [1973]) and the 'mixed-motive' framework]" (*Melman v Montefiore Med. Ctr.*, 98 AD3d 107, 113 [1st Dept 2012]).

Under the *McDonnell Douglas* framework, a plaintiff asserting a claim of employment discrimination bears the initial burden of establishing a prima facie case, by showing that she is a member of a protected class, she was qualified to hold the position, and that she suffered adverse employment action under circumstances giving rise to an inference of discrimination (*id.* at 113). If the plaintiff makes such a showing, the burden shifts to the employer to show a legitimate, nondiscriminatory reason for the employment decision (*id.* at 113-114). If the employer succeeds in doing so, the burden then shifts back to the plaintiff to prove that the reason proffered by the employer was merely a pretext for discrimination (*id.* at 114). Under the "mixed-motive" framework, "the question on summary judgment is whether there exist triable issues of fact that discrimination was one of the motivating factors for the defendant's conduct" (*Williams*, 61 AD3d at 78 n 27). Thus, under this analysis, "the employer's production of evidence of a legitimate reason for the challenged action shifts to the plaintiff the lesser burden of raising an issue as to whether the [adverse employment] action was motivated at least in part by . . .

---

2. Vuona is not a party to this action.
3. Wharton is not a party to this appeal.

discrimination" (*Melman,* 98 AD3d at 127 [internal quotation marks omitted]).

Applying these principles, we find that the motion court properly dismissed plaintiffs' claims of gender discrimination under the City Human Rights Law. At the outset, the federal court's decision collaterally estops plaintiffs from relitigating many discrete factual issues that were decided against them in the federal action. The doctrine of collateral estoppel precludes a party "from relitigating in a subsequent action an issue clearly raised and decided against that party in a prior action" (*see Ji Sun Jennifer Kim v Goldberg, Weprin, Finkel, Goldstein, LLP,* 120 AD3d 18, 23 [1st Dept 2014]). To successfully invoke this doctrine, "the issue in the second action must be identical to an issue which was raised, necessarily decided and material in the first action," and "the party to be precluded must have had a full and fair opportunity to litigate the issue in the earlier action" (*id.*).

In *Simmons-Grant v Quinn Emanuel Urquhart & Sullivan, LLP* (116 AD3d 134 [1st Dept 2014]), this Court applied the doctrine of collateral estoppel in the context of a state court litigation of a City Human Rights Law claim following a federal court's dismissal of a similar claim brought under federal law. In that case, we concluded that collateral estoppel can apply to "strictly factual question[s] not involving application of law to facts or the expression of an ultimate legal conclusion" (*id.* at 140). As explained further herein, plaintiffs are precluded from relitigating many "strictly factual" issues underlying their City Human Rights Law claims.

Viewing the evidence in the light most favorable to plaintiffs, no reasonable jury could find defendants liable under either the *McDonnell Douglas* or "mixed-motive" frameworks. Defendants do not dispute, for purposes of this appeal, that plaintiffs have made out a prima facie case of gender discrimination. Likewise, plaintiffs do not challenge on appeal the motion court's finding that defendants articulated legitimate nondiscriminatory reasons for including them in the layoffs. There is no question that a reduction in force undertaken for economic reasons is a nondiscriminatory basis for employment terminations (*see Matter of Laverack & Haines v New York State Div. of Human Rights,* 88 NY2d 734, 738-739 [1996]; *Sheikh v Habib Bank,* 270 AD2d 107, 108 [1st Dept 2000]).

Further, defendants have proffered evidence showing that plaintiffs were included in the layoffs due to their poor work performance (*see Bennett v Health Mgt. Sys., Inc.,* 92 AD3d 29, 45-46 [1st Dept 2011] [unsatisfactory work performance is a

nondiscriminatory motivation]). Specifically, defendants point to evidence showing that, based on objective standards, Hudson's performance was the weakest compared to the other Stage II trainees with one to three months length of service. Likewise, defendants put forth evidence showing that, based on similar objective standards, Kuo was the weakest performer in her group of Stage II trainees having six or more months length of service.

Even when analyzed under the more liberal City Human Rights Law, no reasonable jury could conclude that defendants' nondiscriminatory reasons for laying off plaintiffs were pretextual, or that gender discrimination played any role in those decisions. Plaintiffs argue that gender played a factor in the layoff decisions because they performed better than similarly situated male trainees who were not laid off. Collateral estoppel precludes this claim. The federal court specifically found that there was "no evidence of male comparators to Hudson being treated differently," that "[n]o other . . . trainees [within the same length of service group] had nearly as poor performance data as Hudson," and that "[Hudson's] performance metrics were a far cry from those of any trainee who ultimately survived the [layoffs]." Likewise, with respect to Kuo, the federal court found that "[w]ithin her [length of service] group, Kuo had the weakest performance record, having met her hurdles" only 50% of the time.

Plaintiffs complain that the methodology used by Meshel and Roccanova to decide who would be let go shows pretext because it did not precisely follow corporate management's directives. Regardless of whether a different termination sequence might have made better business sense, there is no basis to conclude that gender played any role in the methodology employed. Nor can gender bias be inferred by the decision not to terminate three male trainees who were on the "no exceptions" list. These trainees were spared, after consultation with Human Resources personnel, due to extenuating circumstances. One of the men, JBC, was on medical leave for serious emotional problems; another, Joshua Young, had recently landed a multimillion dollar 401(k) account which would take him above the performance hurdles once it was finalized; the third man, Shahe Galstian, had a sponsorship agreement with a female financial advisor whereby credit for business she brought in could be transferred to him to make up for his shortfalls. Neither Hudson nor Kuo had circumstances even remotely comparable to these, and no reasonable jury could conclude that these men were spared, and plaintiffs were terminated, on the basis of gender.

Plaintiffs contend that Meshel and Roccanova failed to credit Kuo with certain business not reflected in her performance figures, but considered similar unreflected business for Joshua Young, who was not laid off. Any claim that Meshel and Roccanova had actual knowledge of Kuo's alleged business is precluded by collateral estoppel. The federal court found that Kuo had not presented "any evidence that Meshel and Roccanova *knew* that the data reflected in the reports for Kuo, on which the decision to terminate her was made, were inaccurate." In contrast, the federal court found that Roccanova had actual knowledge of Young's unreflected business, a finding that also is entitled to preclusive effect. The absence of actual knowledge renders baseless plaintiffs' claim that Meshel and Roccanova ignored Kuo's additional business.

There is insufficient support for plaintiffs' contention that the layoff decisions were infected by a purported office-wide culture of gender bias. Collateral estoppel precludes plaintiffs from arguing that male trainees were provided better mentoring and teaming opportunities than women. The federal court specifically found that plaintiffs had adduced no evidence to support this claim. Even if some managers made inappropriate gender-based comments, under the circumstances, they constitute at most stray remarks which, "even if made by a decision maker, do not, without more, constitute evidence of discrimination" (*Melman*, 98 AD3d at 125; *see Godbolt v Verizon N.Y. Inc.*, 115 AD3d 493, 494-495 [1st Dept 2014], *lv denied* 24 NY3d 901 [2014]). Although the subject matter of a book promoted at a firm event could be viewed as inappropriate, the event took place eight months prior to the layoffs, negating any causal nexus between the two (*see id.*).

Finally, plaintiffs' reliance on statistics as evidence of pretext or bias is unavailing, because the sample sizes are "too small to support an inference of discrimination" (*Armstrong v Sensormatic/ADT*, 100 AD3d 492, 493 [1st Dept 2012]). In any event, in the absence of other evidence of gender discrimination, the statistics alone are insufficient to defeat summary judgment. We also note that roughly half of those terminated were men.

We have considered plaintiffs' remaining contentions and find them unavailing. Concur—Tom, J.P., Sweeny, Richter and Manzanet-Daniels, JJ. ■