Russell v New York Univ. (2022 NY Slip Op 02765)

Russell v New York Univ.

2022 NY Slip Op 02765

Decided on April 26, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: April 26, 2022

Before: Kern, J.P., Gesmer, González, Shulman, Higgitt, JJ. 

Index No. 29210/17E Appeal No. 14695 Case No. 2021-00123 

[*1]Dr. Suzan Russell, Plaintiff-Appellant,
v
New York University, et al. Defendants-Respondents.

Ballon Stoll Bader & Nadler, P.C., New York (Marshall B. Bellovin of counsel), for appellant.
Proskauer Rose LLP, New York (Joseph C. O'Keefe of counsel), for New York University, Fredric Schwarzbach and Robert Squillance, respondents.
McElroy, Deutsch, Mulvaney & Carpenter, LLP, New York (Bradford P. Meisel and John J. Peirano of the bar of the state of New Jersey, admitted pro hac vice, of counsel), for Joseph M. Thometz and Eve Meltzer, respondents.

Order, Supreme Court, Bronx County (Howard H. Sherman, J.), entered on or about July 9, 2020, which granted defendants' motions to dismiss the complaint as against them, affirmed, without costs.
Plaintiff commenced this action to recover damages for injuries she allegedly sustained as a result of defendants' violations of various provisions of the New York State and New York City Human Rights Laws. Plaintiff also asserted a cause of action for intentional infliction of emotional distress against certain of the individual defendants.
Defendants moved to dismiss the complaint under CPLR 3211. They argued, among other things, that plaintiff's human rights law claims should be dismissed on collateral estoppel grounds (see CPLR 3211[a][5]).
Defendants' collateral estoppel arguments were founded on a lengthy decision and order of the United States District Court of the Southern District of New York (Russell v New York Univ., 2017 WL 3049534, 2017 US Dist LEXIS 122717 [SD NY, July 17, 2017, No. 1:15-CV-2185-GHW], affd 739 Fed Appx 28 [2d Cir 2018]) that dismissed, on summary judgment, the complaint brought by plaintiff in a prior action alleging human rights law violations against many of the same parties who are defendants to this action. The court dismissed plaintiff's federal claims under Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, and The Age Discrimination in Employment Act on the merits. The court declined to exercise supplemental jurisdiction over plaintiff's State and City Human Rights Laws claims and dismissed them without prejudice. The Second Circuit affirmed (739 Fed Appx 28). Plaintiff's complaints in the federal action and in this action are based on the same factual allegations and assert essentially the same State and City Human Rights Law claims.
Supreme Court granted defendants' CPLR 3211 motions to dismiss the complaint, prompting this appeal by plaintiff.
It is well established that claims under the New York City Human Rights Law must be analyzed separately and independently from claims under the federal and New York State Human Rights Laws (Williams v New York City Hous. Auth., 61 AD3d 62, 66 [1st Dept 2009], lv denied 13 NY3d 702 [2009]; see Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 34 [1st Dept 2011], lv denied 18 NY3d 811 [2012]). "The independent analysis must be targeted to understanding and fulfilling what the [Civil Rights Restoration Act of 2005 (Local Law No. 85 [2005] of City of New York)] characterizes as the City HRL's uniquely broad and remedial purposes, which go beyond those of counterpart State or federal civil rights laws" (Williams v New York City Hous. Auth., 61 AD3d at 66 [internal quotation marks omitted]).
In light of the particular express facts that the federal courts found were conclusively demonstrated by the record on the summary judgment motions before the district court; the nature of the allegations underlying plaintiff's State and [*2]City Human Rights Law claims in this action and the manner in which plaintiff has litigated those claims; and the relevant collateral estoppel case law (including Simmons-Grant v Quinn Emanuel Urquhart & Sullivan, LLP [116 AD3d 134 (1st Dept 2014)]  which plaintiff does not cite, let alone discuss), we conclude that, even affording the City Human Rights Law claims the liberal analysis to which they are entitled, plaintiff's claims under both the State and City Human Rights Laws were properly dismissed under the doctrine of collateral estoppel (see Karimian v Time Equities, Inc., 164 AD3d 486, 489 [2d Dept 2018], lv dismissed 32 NY3d 1074 [2018] ["where a prior factual determination rendered with regard to a Title VII or NYSHRL cause of action is determinative of a cause of action asserted pursuant to NYCHRL in a subsequent action, the NYCHRL cause of action may be barred pursuant to the doctrine of collateral estoppel"]; see also Johnson v IAC/InterActiveCorp., 179 AD3d 551 [1st Dept 2020], lv denied 35 NY3d 912 [2020]; Hudson v Merrill Lynch & Co., Inc., 138 AD3d 511, 515 [1st Dept 2016], lv denied 28 NY3d 902 [2016]). We review the Human Rights Law claims in turn.
In concluding that plaintiff failed to allege discriminatory intent, the motion court correctly held that collateral estoppel applied to facts identical to those necessarily found by the district court to be undisputed when it granted summary judgment dismissing plaintiff's federal employment discrimination claims (see Simmons-Grant, 116 AD3d at 140; Hudson v Merrill Lynch & Co., Inc., 138 AD3d at 515). Federal and City Human Rights Law discrimination issues are not necessarily identical for collateral estoppel purposes, because the purposes of the City Human Rights Law go beyond those of counterpart federal civil rights laws (see Williams v New York City Hous. Auth., 61 AD3d at 66; Administrative Code of the City of New York § 8-130). Nevertheless, it would be illogical to accept as true in the state action a factual allegation rejected by the federal court where the plaintiff had a full and fair opportunity to litigate it in the federal action, as long as the same conclusion would result if the allegation were viewed under the more liberal City Human Rights Law standard (see Simmons-Grant, 116 AD3d at 141).
Similarly, in dismissing the discrimination and hostile work environment claims against NYU, the motion court correctly relied on the district court's finding that defendants Joseph Thometz and Eve Meltzer (the individual defendants) were not supervisors or managers, and thus that NYU, as plaintiff's employer, was not strictly liable for their conduct (Administrative Code § 8-107[13][b]; see Zakrzewska v New School, 14 NY3d 469, 480-481 [2010]). Plaintiff is also precluded, on collateral estoppel grounds, from arguing that NYU is vicariously liable because it knew of Thometz's "unlawful discriminatory conduct" but failed to take "immediate and appropriate corrective action" [*3]to prevent that conduct (id. at 480). The federal courts found that the NYU defendants were initially not aware of and did not participate in the individual defendants' conduct. Once made aware of it, NYU acted promptly, exhaustively investigating the conduct and taking reasonable steps to remedy it.
In addition, because plaintiff is precluded from relitigating whether the individual defendants had any supervisory authority over her, they cannot be held individually liable under the City Human Rights Law or the New York State Human Rights Law (see Priore v New York Yankees, 307 AD2d 67, 74 [1st Dept 2003], lv denied 1 NY3d 504 [2003]). Plaintiff's conclusory allegations that the individual defendants were her supervisors are insufficient to support City or State Human Rights Law claims against them.
Finally, plaintiff's retaliation claim is premised on plaintiff's termination from NYU's employ approximately 6 1/2 months after the commencement of the federal action. However, the federal courts found that NYU provided a legitimate, nonretaliatory reason for plaintiff's termination: plaintiff breached a protective order issued by the district court by sending unsolicited emails to a potential witness in the federal action. Moreover, the federal courts found that plaintiff failed to present evidence that NYU's reason was pretextual.
Although plaintiff intimates that her termination after an unsuccessful court-annexed mediation of the federal action suggests that NYU's reason for the termination was pretextual, plaintiff indisputably engaged in the conduct resulting in her termination  sending emails to the potential witness in the federal action  only after the unsuccessful mediation.[FN1] Therefore, the stated ground for plaintiff's termination  which the federal courts found constituted a legitimate, nonretaliatory reason  did not exist at the time of the mediation.
To the extent plaintiff relies on the decision of the arbitrator who heard and determined the grievance she brought following her termination in an effort to demonstrate that NYU's reason was pretextual, that reliance is misplaced. The arbitrator found that the conduct cited by defendants for terminating plaintiff's employment (i.e., contacting a potential witness in the federal court action in violation of an order of that court) "did not rise to the level that would justify immediate termination." In addressing the arbitrator's decision, the Second Circuit observed that, "[a]t best, . . . the arbitrator's decision suggests only that the particular serious disciplinary response NYU took against [plaintiff] might have been too severe, not that its decision to impose serious discipline on her was unwarranted" (739 Fed Appx 28 at 34 [internal quotation marks and emphasis removed]). The court concluded, "In the context of this case, where [plaintiff] has not pointed to any other evidence of pretext or retaliatory animus, . . . the arbitrator's decision does not suffice to [*4]create a genuine dispute over the NYU Defendants' subjective motivations for terminating [plaintiff]" (id.).[FN2]
Therefore, the motion court correctly relied on the federal courts' findings that plaintiff failed to proffer any evidence that the termination of her employment was pretextual and/or due to any retaliatory animus (see Williams v New York City Tr. Auth., 171 AD3d 990 [2d Dept 2019] [CPLR 3211(a)(5) motion]; Karimian, 164 AD3d at 489 [CPLR 3211(a)(5) motion]; see also Simmons-Grant, 116 AD3d at 141 ["Although defendants' motion is not for summary judgment, once defendant established its nonretaliatory reason in the federal action, plaintiff was required to identify an issue of fact. She failed to do so."]). Furthermore, the facts found to be demonstrated in the federal action that are entitled to collateral estoppel effect establish that discrimination was not one of the motivating factors for plaintiff's termination (see Franco v Hyatt Corp., 189 AD3d 569, 571 [1st Dept 2020] [on a claim for retaliation under the City Human Rights Law, "[i]f the defendant offers legitimate, nonretaliatory reasons for its conduct, then the plaintiff must produce evidence showing that the defendant was motivated, at least in part, by an impermissible motive"]; see also Johnson v IAC/InterActiveCorp., 179 AD3d at 552; Hudson v Merrill Lynch & Co., 138 AD3d at 515-516).
Plaintiff also failed to allege facts sufficient to support a claim for intentional infliction of emotional distress (IIED). The abhorrent conduct at issue, some of which Thometz admitted to, was offensive and insulting. Nevertheless, it was fairly short lived, and, based on the "exceedingly high legal standard" for pleading an IIED claim (Chanko v American Broadcasting Cos. Inc., 27 NY3d 46, 57 [2016]), the claim was correctly dismissed. The conduct at issue was not "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (id. at 57-58 [internal quotation marks omitted]).
We acknowledge our colleagues' thoughtful treatment of plaintiff's retaliation claim under the City Human Rights Law. However, for the reasons outlined above, we
conclude that the retaliation claim under the City Human Rights Law must be dismissed under the doctrine of collateral estoppel.
We have considered plaintiff's remaining contentions and find them to be without merit.
All concur except Gesmer and GonzÀlez, JJ.
who dissent in part in a memorandum by
GonzÀlez, J., as follows:
González, J., dissenting in part,
A federal court's findings do not necessarily preclude a state court adjudication of a city law claim. In Simmons-Grant v Quinn Emanuel Urquhart & Sullivan, LLP, we stated that "[a] federal court's factual findings under the federal analytical framework may preclude state courts from adjudicating city law claims" (116 AD3d 134, 140 [1st Dept 2014]). For [*5]the reasons that follow, I would hold that collateral estoppel does not bar plaintiff's retaliation claim under the New York City Human Rights Law (Administrative Code of City of NY § 8-107 et seq.) (City HRL) against defendants New York University, Robert Squillace, and Frederic Schwarzbach.
Background
Plaintiff, Suzan Russell, served as an adjunct faculty member in the Liberal Studies Program of defendant New York University (NYU) until her employment was terminated in October 2015. Plaintiff is Jewish and gay, and was over 40 years of age at the time of the termination. Her employment with NYU was governed by a Collective Bargaining Agreement.
In March 2015, plaintiff commenced an employment discrimination action in the United States District Court for the Southern District of New York. She named as defendants NYU and Robert Squillace, Associate Dean for Academic Affairs in the Liberal Studies Program, who was one of her supervisors during the relevant time period (the NYU defendants).[FN3] Plaintiff also named as defendants Joseph Thometz, a full-time faculty member in the Liberal Studies Program from fall 2006 until his resignation from the program in Spring 2014, and Thometz's wife, Eve Meltzer, a tenured faculty member of NYU's Gallatin School of Individualized Study.[FN4]
Plaintiff's federal action asserted claims for discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Acts of 1964 (42 USC § 2000e et seq.) (Title VII); Title IX of the Education Amendments of 1972 (20 USC § 1681 et seq.) (Title IX); the Age Discrimination in Employment Act of 1967 (29 USC § 621 et seq. (the ADEA); the New York State Human Rights Law (New York Executive Law § 290 et seq.) (State HRL), and the City HRL. Plaintiff also asserted a claim for intentional infliction of emotional distress.[FN5]
Plaintiff's claims arose from harassment that she allegedly began to experience in late June or early July 2013, when Thometz and possibly Meltzer and others began to harass her via mail, email, and online comments. Plaintiff alleged that she began receiving unsolicited mail in her physical NYU mailbox targeting her age, her religion, her gender identity and expression as a woman, and her sexual orientation as a lesbian. Among the items she allegedly received were an AARP membership invoice addressed to "Suzan Litewait Russell," a newsletter entitled "Healthy Aging," materials related to heart conditions and arthritis, urinary incontinence pads, vaginal lubricants, pornographic materials that included same-sex encounters and sadistic depictions of women, materials on converting to Christianity, and a copy of the Koran.
Plaintiff contends that she was also impersonated on the internet. She discovered that offensive comments had been posted under her name, or insulting variations of her name, on different websites, including a comment on an NYU student-run blog that "outed" her sexual orientation.
Plaintiff maintains that this harassment [*6]continued through September 2013, culminating in an email from "Comfort Plus Incontinence Specialists" in 2014 that referred to her as Suzan "Troll" Russell.
Pursuant to a standing order, the courts of the Southern District of New York required that counseled employment discrimination cases be referred for mediation. The parties engaged in such a mediation on September 3, 2015. They did not reach a resolution.
One month later in October 2015, plaintiff was terminated from her employment for the stated reason that she contacted a professor who was a potential witness in the federal action, in violation of an order of the District Court. The decision to terminate plaintiff was made solely by Frederic Schwarzbach, Dean of the Liberal Studies Program, after consultation with NYU's Office of General Counsel (Russell v New York Univ., 2017 WL 3049534, *24). Plaintiff's union filed a grievance on her behalf and argued that the termination was not supported by "just cause" as required under the Collective Bargaining Agreement (CBA) (id.). An arbitrator agreed with the union's position but concluded that plaintiff engaged in misconduct that "justif[ied] some discipline" because plaintiff understood that she should not have violated the confidentiality order or engaged in a verbal attack on another faculty member.[FN6] In finding that plaintiff's actions gave rise to a "serious issue that required a serious response" (id.), the arbitrator determined that "[w]ritten warnings are appropriate . . . when the problem requires a more serious response" (id.). Critically, the arbitrator determined that "the University did not have just cause to terminate" plaintiff. Noting that the CBA did not authorize him to order reinstatement, the arbitrator found that plaintiff was entitled to any monetary remedy due her under Article X of the Collective Bargaining Agreement and awarded her backpay (2017 WL 3049534, *24).
On February 3, 2016, plaintiff amended her federal complaint to add a claim based on her termination (id. at *26).
On July 17, 2017, the District Court granted the NYU defendants' motion for summary judgment dismissing plaintiff's federal claims for hostile work environment, discrimination, and retaliation (id. at *40).
Noting that it was undisputed that Thometz and Meltzer were plaintiff's coworkers and not her supervisors, the District Court found that the NYU defendants acted reasonably with respect to plaintiff's complaints and could not be found liable for creating a hostile work environment (id. at *28-30). The District Court determined that NYU and its representatives "responded to [plaintiff's] complaints and follow-up emails promptly and often" and that NYU's Office of Equal Opportunity "took steps to attempt to remedy the effects of the complained-of conduct" (id. at *28-29). The District Court noted that, on multiple occasions, plaintiff directed NYU not to act or proceed further after she reported the harassment to the New York County District Attorney's [*7]Office (id. at *30 ["the record is replete with instances of (plaintiff) asking NYU to play second-chair to the DA"]).
As to plaintiff's claim for discrimination against the NYU defendants, the District Court recognized that Thometz admitted at his April 2016 deposition that he had signed plaintiff up for "free stuff" (which included products and catalogs, including those from adult websites) and engaged in at least some online impersonations of her (id. at *25). However, the court found that the NYU defendants did not discriminate against plaintiff when they disciplined her, but not Thometz, for violating NYU's Code of Ethical Conduct (id. at *32). According to the court, "[plaintiff's] reliance on Thometz as her comparator fails because, at the time he admitted to the conduct—which the Court assumes arguendo to have violated the Code of Ethical Conduct—he was no longer employed by the Liberal Studies Program" (id.). The court noted that Dean Schwarzbach no longer had the authority to discipline Thometz upon his resignation from the Liberal Studies Program in 2014 and that therefore plaintiff and Thometz were not similarly situated (id., citing Shumway v United Parcel Serv., Inc., 118 F3d 60, 64 [2d Cir 1997]).
Nonetheless, and subsequent to his resignation from the Liberal Studies Program, Thometz continued working at the NYU Gallatin School of Individualized Study until May 2016.
The court found that plaintiff's termination did not evince retaliatory animus because the cognizable protected activities were too remote from her termination to give rise to an inference of retaliation (id. at *36). While the court recognized that plaintiff also made an argument for retaliation based on the one-month gap between the end of the court-ordered mediation and her termination, the court declined to consider that argument because plaintiff raised it for the first time in her opposition brief.[FN7] The court did not address whether the arbitrator's finding that plaintiff's termination was improper had any bearing on the merits of her retaliation claim.
Significantly, the court declined to exercise supplemental jurisdiction as to plaintiff's "remaining state- and city- law claims" and dismissed plaintiff's State HRL and City HRL claims without prejudice (id. at *40).
Plaintiff appealed to the United States Court of Appeals for the Second Circuit, challenging only the District Court's dismissal of her hostile work environment and retaliation claims against the NYU defendants. The Second Circuit affirmed (see Russell v New York Univ., 739 Fed Appx 28 [2d Cir 2018]). It agreed with the District Court's finding that the NYU defendants' efforts to remedy the harassment had met an objective standard of reasonableness (Russell, 739 Fed Appx at 30-31). In so holding, the Second Circuit highlighted the ways in which the NYU defendants responded to plaintiff's complaints and the ways in which plaintiff, at times, impeded those efforts (id.). As to plaintiff's claim [*8]for retaliation, the Second Circuit concluded that "the arbitrator's decision does not suffice to create a genuine dispute over the NYU Defendants' subjective motivations for terminating [plaintiff]" and stated that "[a]t best, then, the arbitrator's decision suggests only that the particular serious [disciplinary] response NYU took against [plaintiff] might have been too severe, not that its decision to impose serious discipline on her was unwarranted" (id. at 30).
While her appeal to the Second Circuit was pending, plaintiff commenced an action premised on the State HRL and the City HRL in Supreme Court, Bronx County. In her state court complaint, plaintiff alleged claims for discrimination, hostile work environment, and retaliation against all defendants. She added a new theory of discrimination, based on her alleged disability due to a heart condition. She asserted a cause of action against Thometz and Meltzer for intentional infliction of emotional distress, added as a defendant Frederic Schwarzbach, the former Dean of the Liberal Studies Program, and alleged that all defendants (including Thometz and Meltzer) had acted in a supervisory capacity. Plaintiff now formally alleged that she was terminated one month after the unsuccessful conclusion of the mediation of the federal action.
All defendants moved to dismiss under CPLR 3211(a)(5) and (7), contending that plaintiff's Human Rights Law claims were barred by collateral estoppel. In addition, Thometz and Meltzer argued that plaintiff had failed to state a claim for intentional infliction of emotional distress.
Supreme Court granted the motions and dismissed the complaint in its entirety. I would modify the court's order to reinstate plaintiff's claim for retaliation under the City HRL as against the NYU defendants.
Analysis
On a CPLR 3211(a)(7) motion to dismiss, the complaint, as amplified by the papers submitted on the motion (see Rovello v Orofino Realty Co., 40 NY2d 633, 635 [1976]; Jeudy v City of New York, 142 AD3d 821, 821 [1st Dept 2016]; Kaminsky v FSP Inc., 5 AD3d 251, 251-252 [1st Dept 2004]), should be liberally construed (see CPLR 3026), the facts presumed true, and the pleading accorded the benefit of every reasonable favorable inference (see Doe v Bloomberg L.P., 36 NY3d 450, 454 [2021]). The motion must be denied if from the four corners of the pleadings "factual allegations are discerned which taken together manifest any cause of action cognizable at law" (Polonetsky v Better Homes Depot, 97 NY2d 46, 54 [2001] [internal quotation marks omitted]; see Doe, 36 NY3d at 454 ["The ultimate question is whether, accepting the allegations and affording these inferences, plaintiff can succeed upon any reasonable view of the facts stated"] [internal quotation marks omitted]). The Court of Appeals has explained that "[w]hether a plaintiff can ultimately establish its allegations is not part of the calculus in determining a motion to dismiss" (see EBC I, Inc. v Goldman, Sachs & [*9]Co., 5 NY3d 11, 19 [2005]; M.H.B. v E.C.F.S., 177 AD3d 479, 480 [1st Dept 2019]).
To make out a prima facie case of retaliation under the City HRL, a plaintiff must show that "'(1) she participated in a protected activity known to defendant; (2) defendant took an action that disadvantaged her; and (3) a causal connection exists between the protected activity and the adverse action'" (Cadet-Legros v New York Univ. Hosp. Ctr., 135 AD3d 196, 206 [1st Dept 2015] [brackets omitted], quoting Fletcher v Dakota, Inc., 99 AD3d 43, 51-52 [1st Dept 2012]).
As pertinent to her claim for retaliation under the City HRL, plaintiff alleges that, in March 2015, she commenced the federal action. On September 3, 2015, the parties engaged in a court-mandated mediation. The mediation failed when plaintiff refused to settle. On October 9, 2015, NYU terminated plaintiff. As grounds for terminating her, NYU asserted that plaintiff had violated a so-ordered confidentiality stipulation by contacting and harassing another NYU employee who was a potential witness in the federal action. When plaintiff grieved her termination pursuant to the CBA, the arbitrator found that her conduct did not "rise to the level that would justify immediate termination" (Russell, 2017 WL 3049534, *24). Accordingly, the arbitrator exercised his authority to award plaintiff backpay for the remainder of that academic year.
The temporal proximity between plaintiff's refusal to settle her discrimination claims and her termination some five weeks later supports an inference that she was terminated in retaliation for refusing to settle and continuing to prosecute her discrimination claims (see Cook v EmblemHealth Servs. Co., LLC, 167 AD3d 459, 459-460 [1st Dept 2018] [temporal proximity alone may support inference of causal nexus]; Krebaum v Capital One, N.A., 138 AD3d 528, 528-29 [1st Dept 2016] ["The temporal proximity of plaintiff's complaint and the termination of his employment one month later indirectly shows the requisite causal connection"]; Gorman-Bakos v Cornell Coop. Extension of Schenectady County, 252 F3d 545, 555 [2d Cir 2001] [four-month gap between protected activity and retaliatory action supported finding of causal connection]). This inference is buttressed by the arbitrator's finding that her termination was an unduly harsh remedy for her conduct (see Harrington v City of New York, 157 AD3d 582, 585-586 [1st Dept 2018] [finding issues of fact as to whether defendant's February 2014 finding that plaintiff was psychologically unfit to serve as police officer was causally linked to plaintiff's 2007 commencement of discrimination action against defendant, notwithstanding settlement of action in December 2013]). Based on the foregoing, the complaint states a prima facie claim for retaliation under the City HRL.[FN8]
In response, defendants moved to dismiss the complaint on the grounds of both failure to state a claim and collateral estoppel (CPLR 3211[a][5], [7]). The doctrine of collateral [*10]estoppel "precludes a party from relitigating in a subsequent action or proceeding an issue raised in a prior action or proceeding and decided against that party or those in privity" (Buechel v Bain, 97 NY2d 295, 303 [2001], cert denied 535 US 1096 [2002]). Collateral estoppel applies when four conditions are met:
"(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and decided, (3) there was a full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits" (Conason v Megan Holding, LLC, 25 NY3d 1, 17 [2015], quoting Alamo v McDaniel, 44 AD3d 149, 153 [1st Dept 2007]).
"The party seeking to invoke collateral estoppel has the burden to show the identity of the issues, while the party trying to avoid application of the doctrine must establish the lack of a full and fair opportunity to litigate" (Matter of Dunn, 24 NY3d 699, 704 [2015]). Doubts regarding the preclusive effect of the Federal Courts' findings (as crystallized here in the Second Circuit's decision on appeal) must be resolved in favor of plaintiff, as the party opposing application of the doctrine (see Buechel, 97 NY2d at 305; Wal-Mart Stores, Inc. v United States Fid. & Guar. Co., 11 AD3d 300, 301 [1st Dept 2004]).
The City HRL is, by design, a broader statute than Title VII of the Civil Rights Act of 1964 (see Administrative Code § 8-130[a] ["The provisions of this title shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed"]).[FN9] As we observed in Williams v New York City Hous. Auth. (61 AD3d 62, 68 [1st Dept 2009], lv denied 13 NY3d 702 [2009]), "the text and legislative history [of the statute] represent a desire that the City HRL meld the broadest vision of social justice with the strongest law enforcement deterrent" (id. at 68 [internal quotation marks omitted]). The Court of Appeals has held that the City HRL must be broadly construed in favor of discrimination plaintiffs to the extent that such a construction is reasonably possible (Albunio v City of New York, 16 NY3d 472, 477-478 [2011]), and we have frequently reiterated that principle (see Schmitt v Artforum Intl. Mag., Inc., 178 AD3d 578, 585 [1st Dept 2019]; Suri v Grey Global Group, Inc., 164 AD3d 108, 113 [1st Dept 2018], appeal dismissed 32 NY3d 1138 [2019]; Fletcher, 99 AD3d at 50).
The Second Circuit has also acknowledged the unique, broad application that the City HRL requires and has applied a separate, independent analysis to City HRL claims (see Ya-Chen Chen v City Univ. of New York, 805 F3d 59, 75-76 [2d Cir 2015]).
Accordingly, in the specific context of discrimination cases, we have explained that a federal court's factual [*11]findings under Title VII do not necessarily preclude a state court from making different findings when adjudicating a claim under the City HRL (see Simmons-Grant, 116 AD3d at 140).
Against this backdrop, defendants argue that, in dismissing her federal retaliation claims, the federal courts found that plaintiff had failed to establish that the temporal proximity between her protected activities and her termination supported an inference of retaliatory animus. However, the federal courts' disposition of plaintiff's claims was based upon their application of federal discrimination law and the familiar McDonnell Douglas burden-shifting framework (see McDonnell Douglas Corp. v Green, 411 US 792 [1973], supra). In particular, the federal courts held that, even if the temporal nexus supported an inference of discrimination and established a prima facie case of retaliation, the prima facie claim could not withstand defendants' showing that plaintiff's violation of the confidentiality order constituted a legitimate, nondiscriminatory reason for terminating her.
The Second Circuit added that the arbitrator's decision conclusion that plaintiff's conduct did not support termination of her employment "suggests only that the particular 'serious [disciplinary] response' NYU took against [plaintiff] might have been too severe, not that its decision to impose serious discipline on her was unwarranted" (Russell, 739 Fed Appx at 34 [emphasis omitted]). The Second Circuit concluded that, since, in its view, for purposes of plaintiff's federal discrimination claim, plaintiff "ha[d] not pointed to any other evidence of pretext or retaliatory animus , . . the arbitrator's decision does not suffice to create a genuine dispute over the NYU Defendants' subjective motivations for terminating [plaintiff]" (id.).
This is not, however, the end of the analysis with respect to plaintiff's claim under the City HRL. The maximally protective City HRL proscribes even "'partial" discrimination since "[u]nder Administrative Code § 8-101, discrimination shall play no role in decisions relating to employment, housing or public accommodations'" (Bennett, 92 AD3d at 40 [internal quotation marks omitted]; see Administrative Code § 8-107[7] [proscribing retaliation "in any manner"]). Hence, in contrast to the federal discrimination law context, where "direct[]" evidence of "discriminatory attitude" has been required to make out a mixed-motive case (Raskin v Wyatt Co., 125 F3d 55, 60-61 [2d Cir 1997] [internal quotation marks omitted]; accord Serby v New York City Dept. of Educ., 526 Fed Appx 132, 135 [2d Cir 2013]), under the City HRL, "evidence of an unlawful motive in the mixed motive context need not be direct, but can be circumstantial — as with proof of any other fact" (Bennett, 92 AD3d at 40-41).
For these reasons, where a defendant seeks dismissal of a City HRL claim on the basis of ostensibly nondiscriminatory reasons for an adverse employment action, courts should "move directly [*12]to the question of whether defendant carried its burden of showing that plaintiff did not raise an issue of fact as to whether defendant's reasons were pretextual or whether [impermissible reasons] otherwise played a part in its decision" (Cadet-Legros, 135 AD3d at 202). The City HRL plaintiff will defeat summary judgment by offering "some evidence that at least one of the reasons proffered by defendant is false, misleading, or incomplete" (Bennett, 92 AD3d at 45; accord Watson v Emblem Health Servs., 158 AD3d 179, 183 [1st Dept 2018]; see Franco v Hyatt Corp., 189 AD3d 569, 571 [1st Dept 2020] ["If the defendant offers legitimate, nonretaliatory reasons for its conduct, then the plaintiff must produce evidence showing that the defendant was motivated, at least in part, by an impermissible motive"]).
Viewing the record presented to the federal courts in the light most favorable to plaintiff, I would hold that the temporal proximity between the failed mediation and plaintiff's termination, by itself, suffices to support a finding of a causal relationship for purposes of plaintiff's City HRL retaliation claim. This is a crucial distinction from the outcome reached by the federal courts, which, in applying federal law, held that any causal inference would be too weak to rebut the facially nondiscriminatory reason proffered by defendants for plaintiff's termination, i.e., her violation of the Federal confidentiality order. Since invidious reasons may not form any part of an employment action under the City HRL, these factors alone raise issues of fact as to whether plaintiff's termination was effected, at least in part, in retaliation for her decision to continue the prosecution of her Federal discrimination claims (see Watson, 158 AD3d at 183; Bennett, 92 AD3d at 45).
Because of their holding that temporal proximity was insufficient to support any causal inference, the federal courts discounted the arbitrator's finding that termination was an unduly harsh response to plaintiff's misconduct. In other words, under the federal courts' McDonnell Douglas analysis, plaintiff's claim did not survive defendants' proffered nondiscriminatory reason for her termination, so that there was no occasion to consider whether (as the arbitrator's finding arguably suggests) plaintiff's misconduct was a pretext for her termination. As discussed, however, under the City HRL, the temporal proximity itself supports a finding of a causal nexus. In a state action premised on the City HRL, such as this, circumstantial evidence of a causal relationship raises issues for the trier of fact.
Under a complete City HRL analysis, rather than shifting the burden back to plaintiff to show pretext, defendants' proffered nondiscriminatory reason would merely present additional questions for the trier of fact to consider (see Bennett, 92 AD3d at 40 [in mixed-motive cases, "the plaintiff may leave unchallenged one or more of the defendant's proffered reasons for its actions, and may instead [*13]seek only to show that discrimination was just one of the motivations for the conduct"]). In this regard, under a City HRL analysis, the arbitrator's finding merely reinforces a claim that already presents factual issues (see Tirschwell v TCW Group Inc., 194 AD3d 665, 666 [1st Dept 2021] [protected activity may not serve as "'extra factor'" pushing employer from "dissatisfaction" to "discharge"], quoting Cadet-Legros, 135 AD3d at 207).
I would find that plaintiff's City HRL claim survives scrutiny even under the more rigorous McDonnell Douglas framework. Under this framework, the temporal proximity between the failed mediation (that is, plaintiff's refusal to settle and continued prosecution of her discrimination claims) and plaintiff's termination five weeks later by itself supports an inference of a causal nexus between the two. Defendants' proffered reason for terminating plaintiff — her violation of the federal confidentiality order — shifted the burden to plaintiff to show evidence of pretext, i.e., that defendants' reason is "false, incomplete, or misleading" (Bennett, 92 AD3d at 41; see McDonnell Douglas, 411 US at 804-805 [that the reasons were "in fact a coverup for a . . . discriminatory decision"]). The arbitrator's finding that plaintiff's conduct, while justifying serious discipline, did not warrant termination — under this framework, supplies evidence of pretext, again raising issues of fact as to defendants' true reasons for terminating plaintiff.[FN10]
Simply stated, plaintiff's prima facie claim for retaliation survives collateral estoppel scrutinywhen viewed through the separate analytical lens of the City HRL (see Simmons-Grant, 116 AD3d at 140; Ya-Chen, 805 F3d at 75-76).[FN11]
While I would reinstate plaintiff's City HRL claim for retaliation against the NYU defendants, I agree with the majority's affirmance of the motion court's dismissal of her City HRL claims for retaliation as against Thometz and Meltzer and for discrimination and hostile work environment as against all defendants. As in Simmons-Grant, these causes of action turn on issues that "do[] not implicate any of the several ways in which City HRL claims . . . raise issues not identical to their federal and state counterparts" (Simmons-Grant, 116 AD3d at 140).
The District Court's finding that Thometz and Meltzer were plaintiff's coworkers does not implicate any of the differences between Title VII and the City HRL. This finding requires dismissal of all City HRL claims as against Thometz and Meltzer and precludes plaintiff from asserting that NYU is strictly liable for the actions of Thometz and Meltzer under Administrative Code § 8-107(13).
In addition, as the District Court found, plaintiff's reliance on Thometz as her comparator is fatal to her discrimination claim against the NYU defendants (2017 WL 3049534, *32). By the time of his deposition, when Thometz finally admitted his misconduct, he had already resigned from the Liberal Studies Program, and defendant Schwarzbach [*14]no longer had authority to discipline him (id.). While the City HRL broadly proscribes treating a plaintiff "less well" (see e.g. Askin v Department of Educ. of the City of N.Y., 110 AD3d 621, 622 [1st Dept 2013]), a City HRL plaintiff must still show that she was treated less well than similarly situated persons who were not members of her protected class (see e.g. Thomas v Mintz, 182 AD3d 490, 490 [1st Dept 2020]).
The District Court's finding that the NYU defendants acted reasonably in response to plaintiff's complaints, and the Second Circuit's affirmance of that finding, is dispositive of plaintiff's City HRL hostile work environment claim against the NYU defendants. We have held that the City HRL proscribes hostile work environment conduct that would fall below the federal "severe and pervasive" standard provided that the conduct amounts to more than a "petty slight or trivial inconvenience" (see Hernandez v Kaisman, 103 AD3d 106, 114-115 [1st Dept 2012] [internal quotation marks omitted]). This distinguishing aspect of the City HRL has no bearing on the reasonableness of the NYU defendants' response to plaintiff's complaints.[FN12]
It is undisputed that "City HRL claims—including retaliation claims—raise issues not identical to their federal and state counterparts" (Simmons-Grant, 116 AD3d at 140). Hence, although this case is presented to us in a CPLR 3211 posture, we must assess plaintiff's City HRL claims through a summary judgment lens as of the time they were presented to the federal courts, only so as to determine whether they would have withstood such scrutiny.
Neither side has expressly sought summary judgment review here, nor stated whether the existing record might require further development. Thus, the issue of whether plaintiff's City HRL retaliation claim would survive a summary judgment motion in the state action should not be decided today. As discussed, close review of the federal courts' findings indicates that, on the record presented to the federal courts, plaintiff's City HRL retaliation claim would have survived summary judgment scrutiny under the principles uniquely applicable to the maximally protective City HRL.
Accordingly, I would modify Supreme Court's order to reinstate plaintiff's claim for retaliation against defendants New York University, Fred Schwarzbach, and Robert
Squillace (the NYU defendants) under the New York City Human Rights Law (City HRL), and would otherwise affirm.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: April 26, 2022

Footnotes

Footnote 1: While plaintiff does not specify in her brief how or why the unsuccessful court-annexed mediation is material in analyzing her retaliation claim under the State and City Human Rights Laws, the District Court expressed concern that plaintiff would impermissibly attempt to use statements made during the mediation to support her retaliation claims (see 2017 WL 3049534, *37 n 23).

Footnote 2: Moreover, as the district court observed, "[T]he arbitrator did not find that NYU's termination of [plaintiff] was motivated by any discriminatory animus or anything else other than its judgment as to [plaintiff's] misconduct" (2017 WL 3049534 at *33). Accordingly, the district court found "the arbitrator's findings to be highly probative of the absence of discriminatory intent in connection with her termination" (id. [emphasis added]).

Footnote 3: In the instant state action, the NYU defendants include Frederic Schwarzbach, Dean of the Liberal Studies Program.

Footnote 4: While Thometz resigned from the Liberal Studies program in Spring 2014, he continued to teach at the NYU Gallatin School of Individualized Study until May 2016.

Footnote 5: Since our cases generally focus on the differences between our City HRL analysis and the federal courts' Title VII analysis, I now discuss only plaintiff's federal claims arising under Title VII. In focusing my analysis, I recite only the allegations, and the underlying details of the federal litigation, that are necessary to this appeal. A more detailed recitation may be found in the decision and order of the United States District Court (see Russell v New York Univ., 2017 WL 3049534, 2017 US Dist LEXIS 122717 [SD NY July 17, 2017, No. 1:15-CV-2185-GHW], affd 739 Fed Appx 28 [2d Cir 2018]).

Footnote 6: This description of the arbitrator's report is taken from both the District Court's decision and the arbitrator's report itself. The report, an exhibit referenced in the District Court's decision and available to the public via the federal courts' PACER system, is "material derived from [an] official government Web site[]" (Matter of LaSonde v Seabrook, 89 AD3d 132, 137 n 8 [1st Dept 2011], lv denied 18 NY3d 911 [2012]). Any description of the report that does not include a citation to the District Court's decision is based on the report itself.

Footnote 7: In dicta, the District Court also concluded that, notwithstanding the temporal proximity, the retaliation claim could not survive the federal McDonell Douglas analysis (id. at *37; see McDonnell Douglas Corp. v Green, 411 US 792 [1973]).

Footnote 8: The majority questions the link between the failed mediation and plaintiff's subsequent termination, noting that "the stated ground for plaintiff's termination" — her violation of the federal confidentiality order — "did not exist at the time of the mediation." However, it is well settled that a causal relationship may be inferred from the simple fact that an employment action follows a protected activity where, as here, the temporal relationship is sufficiently close (see, e.g., Cook, 167 AD3d at 459-60).

Footnote 9: Indeed, the City Council has directed that "similarly worded provisions of federal and state civil rights laws [should be viewed] as a floor below which the City's Human Rights law cannot fall, rather than a ceiling above which the local law cannot rise" (Local Law No. 85 [2005] of City of N.Y. § 1; see also Bennett v Health Mgt. Sys., Inc., 92 AD3d 29, 37 n 6 [1st Dept 2011], lv denied 18 NY3d 811 [2012]).

Footnote 10: I take issue, respectfully, with the majority's reference to the District Court's view that the arbitrator's findings were "highly probative of the absence of discriminatory intent in connection with her termination" (2017 WL 3049543 at *33). The District Court's findings on this point — to the extent they were not dicta — were supplanted by the Second Circuit's more liberal view that the arbitrator found that NYU's termination of plaintiff "might have been too severe" (739 Fed Appx at 34). Given the deference that must be accorded to plaintiff's claims, the arbitrator's decision, viewed as a whole, raises issues of fact as to the propriety and proportionality of NYU's decision to terminate plaintiff.

Footnote 11: In contrast, plaintiff's State HRL retaliation claim, at least under the body of State HRL law applicable to plaintiff's claims, does not implicate the unique issues just addressed. Accordingly, I agree with the majority that plaintiff's State HRL retaliation claim does not survive collateral estoppel analysis (see generally Pelepelin v City of New York,189 AD3d 450, 452 [1st Dept 2020] [retaliation claim cognizable only under City HRL, not State HRL]).

Footnote 12: Since the remaining employment discrimination claims must be dismissed under the more protective City HRL, their State counterparts necessarily fail.