Katz v New York City Hous. Preserv. & Dev. (2025 NY Slip Op 51290(U))

[*1]

Katz v New York City Hous. Preserv. & Dev.

2025 NY Slip Op 51290(U)

Decided on August 18, 2025

Supreme Court, New York County

Kingo, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on August 18, 2025
Supreme Court, New York County

Chaim Y. Katz, CHANA KATZ, Plaintiff,

against
New York City Housing Preservation & Development, NEW YORK CITY HOUSING DEVELOPMENT CORPORATION, SITE 5 RESIDENTIAL OWNER LLC, NRT NEW YORK LLC D/B/A CITI HABITATS, C & C APARTMENT MANAGEMENT LLC, Defendant.

Index No. 100949/2024

Chaim Y. Katz and Chana Katz (pro se)
Seth Andrew Motel, Esq. for NEW YORK CITY HOUSING DEVELOPMENT CORPORATION and NEW YORK CITY HOUSING PRESERVATION & DEVELOPMENT (New York City Law Department)
Cali Lynnn Chandiramani, Esq. for SITE 5 RESIDENTIAL OWNER LLC and C & C APARTMENT MANAGEMENT LLC (Goldberg Segalla)
Brian Jeffery Shenker, Esq. for NRT NEW YORK LLC D/B/A CITI HABITATS (Jackson Lewis, P.C.)

Hasa A. Kingo, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 7, 8, 9, 10 were read on this motion for DISMISSAL.
The following e-filed documents, listed by NYSCEF document number (Motion 002) 11, 12, 13, 14, 15, 16, 17, 18, 19 were read on this motion to DISMISS.
The following e-filed documents, listed by NYSCEF document number (Motion 003) 20, 21, 22, 23, 24, 25, 26, 27 were read on this motion to DISMISSAL.
Upon the foregoing documents, defendants the New York City Department of Housing Preservation and Development ("HPD") and the New York City Housing Development Corporation ("HDC") (Motion Seq. 001), defendants Site 5 Residential Owner, LLC ("Site 5") and C&C Apartment Management LLC ("C&C") (Motion Seq. 002), and defendant NRT New York LLC d/b/a Citi Habitats ("Citi Habitats") (Motion Seq. 003) (all together, "Defendants") separately move pursuant to CPLR § 3211 (a)(7) to dismiss the complaint. No opposition was filed for any of the motions. For the reasons set forth herein, the motions are granted.
BACKGROUND
In this action, Plaintiffs Chaim Y. Katz ("Chaim") and Chana Katz ("Chana") (together, "Plaintiffs") allege that defendants discriminated against them on the basis of family size and creed or religion in connection with their attempts to obtain housing through three different affordable housing lotteries in New York City (NYSCEF Doc No. 5, amended complaint).[FN1]
, [FN2]
The HPD and HDC are charged with supervising affordable housing programs throughout New York City (id. ¶ 8). New York City Housing Connect ("Housing Connect") is a web portal operated by HPD and HDC where individuals can find and apply for affordable housing opportunities throughout New York City (id. ¶ 17-18). Between 2014 and 2019, Plaintiffs submitted applications through Housing Connect and were selected for three affordable housing lotteries for apartments located in the Lower East Side neighborhood of Manhattan (id. ¶ 18).
In April 2014, Plaintiffs were selected for a three-bedroom apartment unit through the Alphabet Plaza housing lottery, an affordable housing lottery operated by Housing Connect on behalf of defendants HPD and HDC (the "Alphabet Plaza lottery") (NYSCEF Doc No. 5, amended complaint ¶¶ 18-19). When Plaintiffs applied for the program, the couple had four children and Chana was pregnant with a fifth (id. ¶ 19). The complaint asserts that Plaintiffs were "invited for an interview to verify eligibility," but were ultimately disqualified for the apartment because the family would go over the limit of 6 and be deemed a family of 7" (id.). An excerpt from an email dated June 13, 2014, which is annexed to the complaint, indicates that the couple was informed by email that their housing application was denied because their income exceeded the maximum for the program (id., exhibit A-2). A representative for Plaintiffs responded that the couple was expecting their fifth child, which would impact their income (id.). Upon being advised of this information, Plaintiffs were informed that their revised household [*2]size of seven exceeds the maximum household size for the program and their application would no longer be considered (id., exhibit A-1).
In 2017, Plaintiffs applied for a second affordable housing lottery for the Essex Crossing Site 5 program that was accepting applications for 104 newly constructed units located at 145 Clinton Street, New York, New York (the "Site 5 lottery") (id. ¶ 20). Site 5 is the owner and developer of the Site 5 lottery (id. ¶ 21). C&C is the managing agent for the property. At the time, Plaintiffs' family consisted of seven individuals, including five minor children, however, one of Plaintiffs' children was expected to soon begin residing in a school dormitory and not in the family residence (id. ¶¶ 24-25). Plaintiffs' application was initially selected for the Site 5 lottery (id. ¶ 28). Then, by two letters dated July 21, 2017, the owner of Essex Crossing Site 5 informed Plaintiffs that they were ineligible for the program due to "[n]o units to accommodate family size" and that "[n]o remaining units are available within the project to accommodate your household size" (id., exhibits D, E). Plaintiffs timely appealed this determination. The appeal was denied (id. ¶ 33). The reason for denial provided to Plaintiffs was that "[t]he property [did] not have an available unit to accommodate the household size" (id. ¶¶ 34).
Chaim then submitted a complaint to HDC in connection with the Site 5 denial (id. ¶ 35). By email dated November 2, 2017, HDC advised that "tenant selection is the responsibility of the building owners and managing agents," and "[a]s the supervising agency, HDC will only review complaints by rejected applications to determine if there are any grounds to question or intervene in an owner's decision" (id., exhibit H, I). The letter continues, "[h]aving reviewed the facts of your case, HDC has found no such grounds" (id.). By way of explanation, the letter indicates that occupancy guidelines for the project were published in HDC's Marketing Handbook, these guidelines marketed Essex Crossing Site 5 with a maximum occupancy of six people for a three-bedroom apartment, and that all applications are subject to these occupancy standards (id.). Finally, the letter encourages Plaintiffs to continue to check Housing Connect for additional lotteries and specifically notes that a "plus one (+1) may be applied to occupancy guidelines in [a] Project's Marketing Plan, as long as this +1 standard is determined prior to marketing and made available for all applicants" (id.). Under a +1 standard, a household of seven could qualify for a three-bedroom apartment (id.).
Chaim then filed a complaint with the New York State Division of Human Rights (the "Division") and the United States Department of Housing and Urban Development ("HUD") alleging that HDC and Site 5 discriminated against Plaintiffs because of their familial status, specifically their number of children (id. ¶ 37). Chana was not a party to the Division proceeding. HDC and Site 5 appeared in the Division proceeding as Respondents (id., exhibit J-4, Final Investigation Report and Basis of Determination). Chaim argued that he had been "subjected to familial status discrimination since families, such as Orthodox Jews, with many children, are adversely affected by Respondents' rules," specifically the rules limiting the maximum apartment occupancy to two persons per bedroom (id. at 2). HDC argued, inter alia, that it did not own, manage, or operate the apartment project, and Site 5 was responsible for their own tenant selection (id.). HDC acknowledged that Site 5 had a Plus One (+1) option in their general plan, but chose not to apply the option to the project (id.). Finally, HDC argued that the "maximum occupancy limits were applied consistently for each applicant so that all applicants were treated fairly" (id.). Site 5 argued, inter alia, that the two persons per bedroom rule was applied for legitimate reasons, including that the subject building would be overcrowded, and its [*3]water, sewer, and electrical systems would be overloaded (id. at 3). Site 5 asserted that the two persons per bedroom rule "is consistent with and permitted by the rules and procedures set forth by the monitoring city agencies that govern [the] property, including HDC, HPD, and HUD" (id.). It continued that HDC and HPD had approved the two persons per bedroom limitation and that "HUD has ruled that the two persons per bedroom rule is reasonable under the Fair Housing Act and is in accordance with HUD's guidance [i.e., the Keating memo]" (id.).
The Division conducted an investigation and issued a Determination After Investigation dated March 27, 2019 (id., exhibit J-3). In an accompanying Final Investigation Report and Basis of Determination, the Division issued a determination that "[t]he record contains sufficient evidence to support a finding of probable cause that Respondents engaged in familial status discrimination against [Chaim]" (id., exhibit J-9). The Division found that "a probable cause determination is warranted because Respondents' rationale for imposing two persons per bedroom rule for the premises is unsupported and Respondents' occupancy restriction appears to have a disparate impact on families with minor children" (id., exhibit J-10). The Division rejected the notion that the building would be overcrowded and its water, sewer, and electrical systems would be overloaded because "the premises is part of an enormous, brand-new multibillion-dollar development" and further noted that the apartments in the development are large enough to easily comply with the New York City building code, which requires a minimum of 80 square feet per person (id.). Finally, the Division recommended that the matter proceed to a public hearing before an administrative law judge (id.). On or about March 2, 2020, Chaim requested that his complaint with the Division be dismissed for administrative convenience because he wished to pursue his claims in court (id. ¶ 43). As a result, the Division dismissed the proceeding on November 30, 2020 for administrative convenience (id. ¶ 44).
After the Division issued the finding of probable cause, the City of New York changed the occupancy guidelines for all New York City housing lotteries, mandating a +1 for all apartments (NYSCEF Doc No. 5, amended complaint ¶ 45). In 2019, Citi Habitats advertised an affordable housing lottery for units located at 118 Orchard Street, New York, New York (the "Orchard lottery") (id. ¶ 46). Citi Habitats is the marketing agent for the Orchard lottery (id. ¶ 47). Plaintiffs applied for and were initially selected for the Orchard lottery (id. ¶¶ 50-51). Then, on or about November 6, 2019, Citi Habitats sent Plaintiffs an ineligibility notice that stated Plaintiffs were ineligible because there were no units in the project that meet their household size requirement (id. ¶ 21). At the time of their application, Plaintiffs' household was eight people, including six children, but Plaintiffs expected one of their children to begin living in a dormitory soon, and, therefore, only expected five of their children to be living in the apartment (id. ¶ 50). Chaim appealed the denial (id. ¶ 53). Citi Habitats responded, stating "unfortunately we do not set the rules of household size allowed in an apartment; HPD is the agency that does" (id. ¶ 54). Chaim appealed again, and the appeal was denied (id. ¶ 57).
On April 6, 2021, Plaintiffs commenced an action arising from these events in the United States District Court for the Southern District of New York, bearing docket number 1:21-cv-[*4]02933-JLR.[FN3]
All defendants in this action were defendants in the federal proceeding. The federal complaint alleged violations of the First Amendment of the United States Constitution, the Fair Housing Act ("FHA"), the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL") (NYSCEF Doc No. 15, federal complaint). Each defendant moved to dismiss the complaint, which were granted by an opinion and order dated August 8, 2022 (NYSCEF Doc No. 16, opinion and order). In its opinion, the District Court held that the Plaintiffs failed to sufficiently plead causes of action under the First Amendment, the FHA, but declined to exercise supplemental jurisdiction over Plaintiffs' state and city law claims (id. at 1). The court dismissed the complaint with prejudice but allowed Plaintiffs 30 days to file an amended pleading (id. at 17). Plaintiffs subsequently retained new counsel and the deadline to file an amended complaint was extended to January 30, 2023 (NYSCEF Doc No. 17, order at 3).
On March 6, 2023, Plaintiffs filed an amended complaint in the federal proceeding, which interposed causes of action for housing discrimination claims based on familial status in violation of the FHA, NYSHRL, and NYCHRL (NYSCEF Doc No. 25). Defendants filed motions to dismiss the amended complaint, which were granted pursuant to an opinion and order dated February 16, 2024 (NYSCEF Doc No. 26). In the February 16, 2024 decision, the federal court dismissed the FHA claim with prejudice and dismissed the state-law claims, once again declining to exercise supplemental jurisdiction (id. at 16).
On August 8, 2024, Plaintiffs commenced this action by filing a summons and complaint (NYSCEF Doc No. 5). Plaintiffs filed an amended complaint on November 8, 2024, which interposes causes of action against Defendants HPD, HDC, Site 5, C&C, and Citi Habitats (collectively, "Defendants") for violations of the NYSHRL and the NYCHRL. On December 20, 2024, defendants HPD and HDC (together, the "City") (Motion Seq. 001), Site 5 and C&C (Motion Seq. 002), and Citi Habitats each filed motions to dismiss the complaint (Motion Seq. 003).
In support of its motion, the City argues that Plaintiffs' claims arising from the Alphabet Plaza lottery denial are time-barred, Chana's claims arising from the Site 5 denial are also time-barred, and that Plaintiffs fail to state a cause of action under the NYSHRL or the NYCHRL because family size is not a protected class under either statute.
In their motion, Site 5 and C&C argue that Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel because they were fully litigated in the prior federal action and the court substantively addressed the claims, Chana's claims against them are time-barred to the extent that they arose before November 2, 2017, both Plaintiffs' claims against C&C are time-barred, Plaintiffs have no cause of action under the NYSHRL or the NYCHRL because family size is not a protected class, and that Plaintiffs otherwise fail to state a cause of action because they did not plead that they are qualified to rent or purchase in the Site 5 lottery and they cannot establish that they were rejected under circumstances which give rise to an inference of unlawful discrimination.
Finally, in its motion, Citi Habitats reiterates the argument that family size is not a protected class under the NYSHRL or the NYCHRL, argues that Plaintiffs' NYSHRL claims fails on the same analysis as the FHA claims which were dismissed by the federal court, Plaintiffs did not sufficiently plead discrimination based on religion or creed, and Plaintiffs claims are otherwise barred by the doctrines of res judicata and collateral estoppel.
Plaintiffs have not filed opposition to any of the pending motions. On January 30, 2025, the parties signed a stipulation that extended the Plaintiffs' time to file responsive papers to February 28, 2025 (NYSCEF Doc No. 28). On February 26, 2025, the parties signed a second stipulation that further extended the time to oppose the motions to April 29, 2025 (NYSCEF Doc No. 32). As of the date of this decision, there have been no further extensions of Plaintiffs' time to oppose the motions, and no opposition has been filed.

DISCUSSION

A. Statutes of Limitation
As a threshold matter, Defendants each move to dismiss on the grounds that all or some of Plaintiffs claims are time-barred. "On a motion to dismiss a cause of action pursuant to CPLR §3211 (a)(5) on the ground that it is barred by the statute of limitations, a defendant bears the initial burden of establishing, prima facie, that the time in which to sue has expired (Benn v Benn, 82 AD3d 548, 548 [1st Dept 2011]). "In considering the motion, [the] court must take the allegations in the complaint as true and resolve all inferences in favor of the plaintiff" (id.). To satisfy their prima facie burden, the movant must establish when the cause of action accrued and that the time to file has expired (see Lebedev v Blavatnik, 144 AD3d 24, 28 [1st Dept 2016]). The burden then shifts to the plaintiff to set forth evidentiary facts sufficient to establish or raise a question of fact as to whether the cause of action is timely by showing, e.g., that the statute of limitations was tolled, or was otherwise inapplicable, or that the action was commenced within the applicable limitations period (see Kitty Jie Yuan v 2368 W. 12th St., LLC, 119 AD3d 674, 674 [2d Dept 2014]).
Causes of action under the NYSHRL and NYCHRL have a three-year statute of limitations from the date of the alleged discrimination (Mascola v City Univ. of New York, 14 AD3d 409, 409 [1st Dept 2005]; CPLR § 214 [2]; Administrative Code of City of New York § 8-502[d]). Plaintiffs' claims arising from the Alphabet Plaza lottery accrued on or about June 13, 2014, the date they were notified that their application was denied (NYSCEF Doc No. 5, complaint, exhibit A-2). These claims were not asserted in the prior administrative proceeding before the Division, were included in the federal proceeding, and are not subject to any applicable toll of the statute of limitation. Therefore, the statute of limitations for any claims arising from the Alphabet Plaza lottery expired on or about June 13, 2017. Whereas this action was not commenced until August 8, 2024, these claims are time-barred and must be dismissed.
Plaintiffs' claims arising from the Site 5 denial accrued at the latest on November 2, 2017, the date of the last alleged violation (NYSCEF Doc No. 5, complaint ¶ 34). Chaim filed his complaint with the Division regarding this denial on October 24, 2018, which was dismissed [*5]by the Division for administrative convenience on November 30, 2020 (id. ¶ 44; exhibit J-3).[FN4]
Chaim's Site 5 claims were tolled during the pendency of the Division proceeding, as against the parties to that proceeding (Executive Law § 297 [9]; Sciss v Metal Polishers Union Loc. 8A, 149 AD2d 318, 321 [1st Dept 1989]). The claims were tolled on October 24, 2018 and had a remaining limitations period of two years and nine days, which started to run again after November 30, 2020, resulting in a limitations date of December 9, 2022. Therefore, his Site 5 claims were timely when the federal action was commenced on April 6, 2021.
Chana was not a party to the Division proceeding (NYSCEF Doc No. 5, amended complaint, exhibit J-4, Final Investigation Report and Basis of Determination). Therefore, she does not benefit from the administrative toll. However, her claims were tolled by the COVID-19 related toll initiated by Governor Cuomo's Executive Order No. 202.8 (see Murphy v Harris, 210 AD3d 410, 411 [1st Dept 2022]). Chana's state law claims accrued on November 2, 2017 and had a three year statute of limitations. The claims were tolled on March 20, 2020 and had a remaining limitations period of six months and five days, which started to run again after November 3, 2020, resulting in a limitations date of May 16, 2021 (see Murphy v Harris, 210 AD3d at 411). Therefore, her Site 5 claims were also timely when the federal action was commenced on April 6, 2021.
Both Plaintiffs' claims arising from the Citi Habitats denial accrued no later than December 2, 2019, when they received notice that their appeal was denied. Therefore, these claims were timely when the federal action was filed.
The federal court dismissed that action on February 16, 2024, declining to reach the merits of the NYSHRL and NYCHRL claims. Plaintiffs then commenced this action on August 8, 2024 (NYSCEF Doc No. 1, county clerk minutes). Section 205 (a) of the CPLR "provides that, with some specified exceptions, a timely and properly commenced action that is later dismissed can be re-commenced 'within six months after the termination[,] provided that . . . service upon defendant is effected within such six-month period' (Schwartz v City of New York, 86 Misc 3d 1205 [A], *4 [Sup Ct, NY County 2025], quoting CPLR § 205 [a].)[FN5]
The dismissal of [*6]Plaintiffs federal court action was not on the merits because the court declined to exercise supplemental jurisdiction and dismissed the state law claims without prejudice, and none of the other CPLR § 205 (a) exceptions apply to this case (id. at *4). Plaintiffs may, therefore, benefit from the six-month saving period set forth in CPLR § 205 (a), provided that the action was filed and served within the six-month time period (Pyne v 20 E. 35 Owners Corp., 267 AD2d 168, 168 [1st Dept 1999]). Whereas the federal action was dismissed on February 16, 2024, Plaintiffs deadline to commence this action and serve the complaint upon Defendants was to August 16, 2024. This action was commenced on August 8, 2024 (NYSCEF Doc No. 1, county clerk minutes).
Affidavits of service for the for the first summons and complaint filed in this action indicate that service of process was effectuated on HPD on August 8, 2024, on Site 5, HDC, and C&C on August 12, 2024, and on Citi Habitats on August 16, 2024 (NYSCEF Doc No. 1, affidavits on file with the county clerk). None of the Defendants have contested service of process in this action. Because this action was commenced and service was effectuated upon all Defendants within six months of the federal action, Plaintiffs benefit from the six-month toll provided for by CPLR § 205 (a), and all of Plaintiffs' claims arising from the Site 5 and Orchard lotteries are timely.
B. Collateral Estoppel
Relying on Dedewo v CBS Corp. (2024 NY Slip Op 30217 [U] [Sup Ct, NY County 2024], Latin, J., affd Dedewo v CBS Corp., 236 AD3d 541 [1st Dept 2025]) and similar cases, Site 5, C&C, and Citi Habitats argue that Plaintiffs' claims are barred by the doctrines of res judicata and collateral estoppel because Plaintiffs previously brought an action in federal court under the FHA, NYSHRL, and NYCHRL. The Dedewo plaintiff filed an action in federal court alleging race and sex-based discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981, the NYSHRL, and the NYCHRL. The federal court granted summary judgment in favor of the defendant on the plaintiff's claims for discriminatory discharge and retaliatory discharge based on race under Section 1981 but declined to exercise supplemental jurisdiction over the state and city law claims (id. at *2). The plaintiff then filed a complaint alleging causes of action for discrimination and retaliation under the NYCHRL in this court, presided over by Justice Richard Latin (id.). Justice Latin held that the plaintiff was estopped from arguing that her termination was the result of discrimination, even under a more liberal standard of the NYCHRL, because of the federal court previously made a factual determination that discrimination was not a factor at all in plaintiff's termination (id. at 2).
In reaching its conclusion in Dedewo, this court relied on the holding in Simmons-Grant v Quinn Emanuel Urquhart & Sullivan, LLP, 116 AD3d 134, 140 [1st Dept 2014]) that "[f]ederal court rulings can be given estoppel effect where the court decided strictly factual questions that do not involve application of the law" (id. at *1-2). Dedewo is distinguishable from this case because the federal court's ruling on Plaintiffs' claims was based entirely on the sufficiency of the claims as pled and the court did not make any factual determinations (NYSCEF Doc No. 26, opinion and order at 16). The federal court also specifically declined to exercise supplemental jurisdiction over the state law claims, which were dismissed without [*7]prejudice (id.). As such, Dedewo is inapplicable here and the prior federal court decision does not bar Plaintiffs' claims in this action.
C. Sufficiency of Pleading
Defendants also move to dismiss pursuant to CPLR § 3211 (a)(7) for failure to state a cause of action. On a motion to dismiss brought under CPLR § 3211, the court must "accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every possible favorable inference, and determine only whether the facts as alleged fit within any cognizable legal theory" (Leon v Martinez, 84 NY2d 83, 87-88 [1994] [citations omitted]). Ambiguous allegations must be resolved in the plaintiff's favor (see JF Capital Advisors, LLC v Lightstone Group, LLC, 25 NY3d 759, 764 [2015]). "The motion must be denied if from the pleadings' four corners factual allegations are discerned which taken together manifest any cause of action cognizable at law" (511 West 232nd Owners Corp. v Jennifer Realty Co., 98 NY2d 144, 152 [2002] [internal citations omitted]). However, a pleading consisting of "bare legal conclusions" is insufficient to defeat a motion to dismiss (Leder v Spiegel, 31 AD3d 266, 267 [1st Dept 2006], affd 9 NY3d 836 [2007], cert denied 552 US 1257 [2008]) and "the court is not required to accept factual allegations that are plainly contradicted by the documentary evidence or legal conclusions that are unsupportable based upon the undisputed facts" (Robinson v Robinson, 303 AD2d 234, 235 [1st Dept 2003]).
Plaintiffs' remaining causes of action allege that Defendants discriminated against Plaintiffs on the basis of familial status, religion, or creed by refusing to rent, lease, or sell housing accommodation to Plaintiffs (NYSCEF Doc No. 5, amended complaint ¶¶ 88-97). Both the NYSHRL and the NYCHRL bar housing discrimination based on several protected classes, including familial status, religion, or creed (Executive Law § 296 [5]; Administrative Code § 8-107 [5]). Section 296 (5) of the NYSHRL provides, inter alia, the following:
5. (a) It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, constructed or to be constructed, or any agent or employee thereof:
(1) To refuse to sell, rent, lease or otherwise to deny to or withhold from any person or group of persons such a housing accommodation because of the race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, status as a victim of domestic violence, lawful source of income or familial status of such person or persons, or to represent that any housing accommodation or land is not available for inspection, sale, rental or lease when in fact it is so available.
(2) To discriminate against any person because of race, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, sex, age, disability, marital status, status as a victim of domestic violence, lawful source of income or familial status in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.
(Executive Law § 296 [5] [a] [1], [2]).
The term "familial status" is defined as follows:
26. The term "familial status", when used in this article, means:
(a) any person who is pregnant or has a child or is in the process of securing legal custody of any individual who has not attained the age of eighteen years, or
(b) one or more individuals (who have not attained the age of eighteen years) being domiciled with:
(1) a parent or another person having legal custody of such individual or individuals, or
(2) the designee of such parent.
(Executive Law § 292 [26]).
The NYCHRL similarly bars housing discrimination on the basis of protected classes, designated as follows:
5. Housing accommodations, land, commercial space and lending practices. (a) Housing accommodations. It shall be an unlawful discriminatory practice for the owner, lessor, lessee, sublessee, assignee, or managing agent of, or other person having the right to sell, rent or lease or approve the sale, rental or lease of a housing accommodation, constructed or to be constructed, or an interest therein, or any agent or employee thereof:
(1) Because of the actual or perceived race, creed, color, national origin, gender, age, disability, sexual orientation, uniformed service, height, weight, marital status, partnership status, or immigration or citizenship status of any person or group of persons, or because of any lawful source of income of such person or persons, or because children are, may be, or would be residing with such person or persons:
(a) To refuse to sell, rent, lease, approve the sale, rental, or lease or otherwise deny to or withhold from any such person or group of persons such a housing accommodation or an interest therein; [. . .]
(Administrative Code § 8-107 [5][a][1][a]).
The plain language of the NYSHRL defines "familial status" as a class of individuals with children. Nothing in the definition indicates that family size is a protected element of this class, only the status of having a child or children. Nor is family size included among the list of protected classes set forth in the Executive Law (Executive Law § 296 [5] [a] [1]). When presented with a question of statutory interpretation, "the starting point in any case of interpretation must always be the language itself, giving effect to the plain meaning thereof" (Kuzmich v 50 Murray St. Acquisition LLC, 34 NY3d 84, 91 [2019]). As the Court of Appeals has consistently reiterated, "courts should construe unambiguous language to give effect to its plain meaning" (id.). Whereas the plain language of the statute indicates that family size is not a protected class under the NYSHRL, this court need look no further with respect to this issue.
Similar to the NYSHRL, the plain language of the NYCHRL bars discrimination "because children are, may be or would be residing with such person or persons," without [*8]reference to family size or the number of persons residing together. This unambiguous language indicates that the relevant protected class consists of all persons residing with children. The NYCHRL was amended in 2005 and 2016 to clarify that the statute "shall be construed liberally for the accomplishment of the uniquely broad and remedial purposes thereof, regardless of whether federal or New York state civil and human rights laws, including those laws with provisions worded comparably to provisions of this title, have been so construed" (McCabe v 511 W 232nd Owners Corp., — NE3d &mdash, 2024 NY Slip Op 06290, *1 [2024]). Nevertheless, "[e]ven if the NYCHRL was intended to be more protective than the state and federal counterparts, and even if its legislative history contemplates that the Law be independently construed with the aim of making it the most progressive in the nation, the NYCHRL still must be interpreted based on its plain meaning" (id.). Interpretations of the NYCHRL "must be reasonable and grounded in the language of the local law" (McCabe, 2024 NY Slip Op 06290 at *2). Applying this standard, there is no reasonable basis for this court to conclude that family size is a protected class under the NYCHRL.[FN6]

Although the federal court declined to exercise supplemental jurisdiction over Plaintiffs' state law claims in the federal action, it determined that family size was not a protected class under the FHA (NYSCEF Doc No. 24, opinion and order at 14 [". . . the Fair Housing Act prevents discrimination based on familial status, not size."], citing to Borum v Brentwood Vill., LLC, 218 F Supp3d 1, 22 [DDC 2016] [It is also important to emphasize that the FHA only protects minor children domiciled with parents or other such persons in a guardian role, as provided by the statute. . . the sub-class of "large families" is not a protected class under the FHA]; see also Debolt v Espy, 832 F Supp 209, 215 [SD Ohio 1993], affd, 47 F 3d 777 [6th Cir 1995] ["The Court notes that as opposed to families in general, 'large families' are not a specifically protected class under Title VIII."]; Fair Hous. Advocates Assn., Inc. v City of Richmond Heights, Ohio, 209 F 3d 626, 638 [6th Cir 2000] [concluding that "families of four, as opposed to families of three, are not protected classes"]). Housing discrimination claims under the NYSHRL are evaluated under the same framework as those brought under the federal FHA (Stalker v Stewart Tenants Corp., 93 AD3d 550, 551-552 [2012] ["Given the substantial identity between the language and purposes of Executive Law § 296 (5) and those of the federal Fair Housing Act," plaintiff who stated a claim under the NYSHRL also stated FHA claim]; Churches United for Fair Housing, Inc. v Blasio, 2018 NY Slip Op 31826 [U], *19 [Sup Ct, NY County 2018], affd Churches United for Fair Hous., Inc. v De Blasio, 180 AD3d 549 [2020] ["Claims under the FHA and Human Rights Law § 296 are evaluated under the same framework."] [internal citation omitted]). Thus, family size is not a protected class under either the FHA or the NYSHRL.
Upon determining that class size is not a protected class under the FHA, the federal court [*9]also noted that, "[t]aking the complaint in the best light, the [Plaintiffs] seemingly claim that the occupancy limits have a disparate impact on families with children because such families will on average be larger than families without children" (NYSCEF Doc No. 72, opinion and order at 14). In this proceeding, Plaintiffs again argue that the occupancy limit is discriminatory because it has a disparate impact and treatment upon families with children and Orthodox Jewish families (NYSCEF Doc No. 5, amended complaint ¶¶ 60-75, 83-92). Whereas families with children, i.e. familial status, and creed or religion are protected classes, the court will consider these claims.
To plead a cause of action for discrimination under the NYSHRL or the NYCHRL, a party may proceed under a theory of disparate treatment. To state a cause of action for housing discrimination under a theory of disparate treatment under either the NYSHRL or the NYCHRL, a plaintiff must plead (1) that they are a member of a class protected by the statute, (2) that they sought and were qualified to purchase or rent the housing in question, (3) that they were rejected, and that the denial of this application occurred under circumstances giving rise to an inference of discrimination (Gibson v 526 W. 158th St. Hous. Dev. Fund Corp., 221 AD3d 455, 455 [1st Dept 2023], citing Sayeh v 66 Madison Ave. Apt. Corp., 73 AD3d 459, 461 [1st Dept 2010]; New York State Div. of Hum. Rts. v 153rd St. Assocs., LLC, 224 AD3d 917, 919 [2d Dept 2024]).
Plaintiffs have pled the first and third elements by making factual allegations that they are a member of a protected class as a family residing with children and observe the Orthodox Jewish faith, and that they were rejected from the housing programs (NYSCEF Doc No. 5, amended complaint ¶¶ 2, 33, 90, 95). Notably, the amended complaint lacks any allegation that Plaintiffs were financially or otherwise qualified to rent or purchase the housing offered in any of the three housing programs, but for the size of their family (id., generally). In reference to the Site 5 lottery, the amended complaint alleges that "[a]t the time of Plaintiffs' application, the Katz family met the requirements of the Site 5 [l]ottery" (id. ¶ 26). However, this conclusory allegation lacks any factual allegations and is situated between several allegations regarding Plaintiffs' family size, with no reference to other qualifications for the programs (id. ¶¶ 25, 27, 30-31).[FN7]
Taken in context, the allegation that Plaintiffs "met the requirements" of the program appears to be a reference to the size requirement, i.e. that Plaintiffs' family size fell within the guidelines of the lottery without the child who was not expected to reside in the apartment. No other factual allegations are offered here or elsewhere regarding Plaintiffs financial or other qualifications for any of the housing programs. Therefore, Plaintiffs failed to adequately plead the third element of the cause of action (see Sanders v. Grenadier Realty, Inc., US Dist Ct, SD NY, 08 Civ 3920 [WHP], 2009, affd 367 Fed Appx 173 [2d Cir 2010] [interpreting the FHA]).
To plead the final element of the claim, that the denial application occurred under [*10]circumstances giving rise to an inference of discrimination, the complaint must contain factual allegations regarding direct evidence of discriminatory treatment (see Fair Hous. Just. Ctr., Inc. v. Cuomo, US Dist Ct, SD NY, 18-CV-3196 [VSB], Broderick, J. [2018] ["Direct evidence of discriminatory treatment is evidence showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse action"]) or regarding circumstances surrounding the denial that give rise to an inference of discrimination (see Gibson v 526 W. 158th St. Hous. Dev. Fund Corp., 221 AD3d 455, 455 [1st Dept 2023] [plaintiff stated cause of action where she alleged that defendant discriminated against her because she was African-American and had an autistic son, defendant never approved an African-American's application, and had only approved purchased of Latin/Hispanic descent for the past seven years]; Axelrod v 400 Owners Corp., 189 Misc 2d 461 [Sup Ct, NY County 2001] [plaintiff stated cause of action for discrimination on the basis of familial status under NYSHRL where she alleged that cooperative board refused to approve sale of her apartment to four young couples of child-bearing age before approving purchase by a 59—year—old divorced woman with no minor children]). The alleged discrimination must be motivated at least in part by discriminatory animus (Bennett v Health Mgmt. Sys., Inc., 92 AD3d 29, 39 [1st Dept 2011]).
To the extent that Plaintiff relies on a theory of disparate treatment, the amended complaint fails to state a cause of action because Plaintiffs do not allege any direct evidence of discrimination or circumstances that would give rise to an inference that their housing applications were denied because they would reside with children or because of their religion or creed. Plaintiffs also do not allege that Defendants were motivated by discriminatory animus. Rather, Plaintiffs allege repeatedly that they were denied due to the size of their family (NYSCEF Doc No. 5, amended complaint). Specifically, Plaintiffs allege that they were disqualified from the Alphabet Plaza lottery because the family would go over the limit of 6 and be deemed a family of 7" (id. ¶ 19), their application was denied for the Site 5 lottery because there were "[n]o units to accommodate family size" and "[n]o remaining units are available within the project to accommodate your household size," (id. ¶¶ 30-31), and they were deemed ineligible for the Orchard lottery because "[t]here [were] no units in the project that meet [Katz's] household size requirements" (id. ¶ 52). The documentary evidence annexed to the complaint demonstrates that none of the correspondence sent to Plaintiffs in connection with the denials references their familial status or creed, only the family size (id., exhibits A-1, D, E, G-2, H, I, L, N). As such, Plaintiffs have not plead a cause of action for discrimination based on a theory of disparate treatment.
Where a plaintiff relies on a disparate impact theory, the complaint must contain factual allegations that a facially neutral practice had a significantly adverse or disproportionate effect on a protected class of individuals (Levin v Yeshiva Univ., 96 NY2d 484, 491 [2001] [internal quotation marks omitted]; New York State Off. of Mental Health v New York State Div. of Hum. Rts., 223 AD2d 88, 90 [3d Dept 1996]; see also Mhany Mgt., Inc. v County of Nassau, 819 F 3d 581, 617 [2d Cir 2016] [discussing claims under the FHA]). The NYCHRL contains specific language regarding disparate impact claims (Administrative Code § 8-107 [17]). In relevant part, the statute provides that "[a]n unlawful discriminatory practice based upon disparate impact is established when . . . a person . . . demonstrates that a policy or practice of a covered entity or a [*11]group of policies or practices of a covered entity results in a disparate impact to the detriment of any group protected by the provisions of this chapter" (Administrative Code § 8-107 [17] [a] [1]).
In the prior federal court action, the court held that Plaintiffs failed to state a disparate impact claim on the basis of creed or religion under the FHA because, inter alia, "they never allege that the occupancy limits have or will result in an underrepresentation of Orthodox Jews in affordable housing lotteries in New York City," and did not compare Orthodox Jews applying for New York City affordable housing lotteries to similarly situated individuals" (NYSCEF Doc No. 16, opinion and order at 11; see also Churches United for Fair Housing, Inc. v Blasio, 2018 NY Slip Op 31826 [U] at *19 [Plaintiff who failed to state a cause of action under the FHA also failed to state a claim under the NYSHRL because the two statutes are evaluated under the same framework.]). The first complaint filed in that action referenced a 2013 Pew Research report that indicates that Orthodox Jewish individuals ages 40-59 have an average of 4.1 children in their lifetime, which Plaintiffs allege puts them "at an inherent disadvantage in applying for affordable housing lotteries," because the average family would exceed the maximum family size requirement of six individuals (NYSCEF Doc No. 15, federal complaint).
The complaint filed in this action contains additional statistical information indicating that New York City "has the largest Jewish population in the USA," that "[i]n the USA, Isreal, and in England, the average Haredi family has an average of between 6 and 7 children per family," and that Orthodox Jewish families in areas near New York City have large household sizes (NYSCEF Doc No. 5, amended complaint ¶¶ 83-86). Despite the addition of these allegations, the amended complaint does not allege that the occupancy limits have or will result in an underrepresentation of Jewish or Orthodox Jewish individuals approved by affordable housing lotteries in New York City, nor have they compared Jewish or Orthodox Jewish individuals applying for housing lotteries in New York City to similarly situated individuals. Moreover, Plaintiffs allege that large families "from other minority groups such as Hispanics [and] Muslims" are similarly impacted by the occupancy limits, which contradicts their allegation that the alleged discrimination was on the basis of religion because he does not allege that groups seven or more individuals of a different creed or religion were accepted to the program (id. ¶ 34). Considering these factors, Plaintiffs have not stated a disparate impact claim on the basis of religion or creed.
The federal court also held that the familial status claim failed because Plaintiffs alleged "no facts or statistical evidence showing a significantly adverse or disproportionate effect on families with children," "did not even allege the average size for a family with children," and did not "compare families with children to families without children" (NYSCEF Doc No. 16, opinion and order at 14). The amended complaint filed in this action contains additional allegations that "there are 67,522 family households of 7+" in New York City and that "nationally, statewide and City wide approximately 95% of households with 7+ had at least one child under 18" (id. ¶¶ 78-79). Plaintiffs allege, without support, that "[m]ost of these families are in desperate need of housing, as they struggle financially due to their large family size," but make no allegations regarding how many of these families applied for affordable housing [*12]lotteries in New York City.[FN8]
More importantly, large families are not a protected class, and Plaintiffs make no allegations that families generally are underrepresented in public housing lotteries (see discussion regarding family size, supra at 10-11; see also Samuels v William Morris Agency, 123 AD3d 472, 473 [1st Dept 2014] ["Moreover, even assuming that plaintiff was entitled to discovery to acquire the relevant statistical data, discovery would not cure the other deficiencies in the complaint."]). Even under the more liberal pleading standards of the amended NYSHRL and the NYCHRL, the amended complaint fails to state a cause of action for discrimination on the basis of familial status, religion or creed (see Dedewo v CBS Corp., 236 AD3d 541 [1st Dept 2025] [complaint that lacked similarly situated comparators failed to state cause of action under NYSHRL or NYCHRL, even under NYCHRL's more lenient standards]).
This court acknowledges the Division finding of probable cause. Generally, a Division determination of no probable cause is entitled to "considerable deference," which changes the standard of review where the court is called upon to review a final determination of the Division in a special proceeding brought pursuant to Executive Law § 298 (see Baird v New York State Div. of Hum. Rts., 100 AD3d 880, 881 [2d Dept 2012]). In a plenary action, the pleading standard remains unchanged, as does the standard of review under CPLR § 3211 (a)(7).[FN9]
Where a plaintiff fails to plead a cause of action, the complaint is ripe for dismissal. Plaintiffs failed to plead a cognizable cause of action in the federal court and their complaint was dismissed with leave to replead. Their second complaint filed in the federal action also failed to plead a cause of action and was dismissed with prejudice as to the federal claims. They then filed a complaint and amended complaint in this action. Despite four opportunities to do so, Plaintiffs have not stated a cognizable cause of action. They also did not oppose any of the three motions pending before this court, nor did they move to further amend the complaint. In view of the extensive procedural history, the claims are hereby dismissed with prejudice. The court, however, declines to impose costs.
Accordingly, it is
ORDERED that all three motions to dismiss (Seq. 001, 002, and 003) are granted to the extent that the amended complaint is dismissed in its entirety, with prejudice; and it if further
ORDERED that the Clerk of the Court shall enter judgment in favor of Defendants accordingly.
This constitutes the decision and order of the court.
DATE 8/18/2025
HASA A. KINGO, J.S.C.

Footnotes

Footnote 1:Except where otherwise noted, the facts are recited here as set forth in the complaint and are accepted as true for the purposes of this motion, as required for a motion to dismiss pursuant to CPLR § 3211 (a)(7).

Footnote 2:The amended complaint interposes causes of action based on creed and familial status, but also frequently references Plaintiffs' religion (NYSCEF Doc No. 5, amended complaint ¶¶ 83-97). For the purposes of this motion, the terms creed and religion are used interchangeably (see Mill River Club, Inc. v NY State Div. of Human Rights, 59 AD3d 549, 550-56 [2d Dept 2009] [using "religion" and "creed" interchangeably under the NYSHRL]).

Footnote 3:The court takes judicial notice of the federal court docket.

Footnote 4:Chaim's claims were also tolled by the COVID-19 related toll initiated by Governor Cuomo's Executive Order No. 202.8, but the COVID-19 toll period from March 20, 2020 through November 3, 2020 is fully encompassed by the administrative toll. Given that, the longer toll is utilized here. C&C was not a party to the Division proceeding (NYSCEF Doc No. 5, complaint exhibit J-1), and the administrative toll does not apply to this defendant (see Kimball v Vill. of Painted Post, 737 Fed Appx 564 [2d Cir 2018] [administrative toll did not extend to defendant that was not a party to Division proceeding]). Nevertheless, the COVID-19 toll applies and claims against C&C are timely, as set forth in the discussion regarding Chana's claims, infra at 6.

Footnote 5:The relief set forth in CPLR § 205 (a) is not available where the prior action was terminated "by a voluntary discontinuance, a failure to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to prosecute the action, or a final judgment upon the merits."

Footnote 6:To the extent that the NYCHRL references a "group of persons," this phrase cannot be understood to include family size as a protected class because the phrase "group of persons" was included in both the NYCHRL well before "familial status" was added as a protected class (see McCabe, 2024 NY Slip OP 06290 at *4 [phrase "group of persons" cannot be read to modify the meaning of "marital status" where the former was included in the statute long before addition of the latter]).

Footnote 7:
 Paragraph 25 of the amended complaint alleges that "[a]t the time of the application, one of Plaintiffs' children was expected to soon be living in a school dormitory and, accordingly, it was expected that only four of Plaintiffs' children would be living with Plaintiffs in the apartment they sought," while paragraph 27 alleges that "Plaintiffs properly and correctly listed their family size on their application." Paragraphs 30 and 31 reference the denials on the basis of family size.

Footnote 8:Additionally, Plaintiffs only provided excerpts from the sources referenced. The statistical evidence provided by Plaintiffs regarding the number of 7+ families in New York City lacks any indication of the year in which it was gathered and the raw numbers set forth in the exhibit indicate 64,100 households, not 67,522 cited by Plaintiffs (NYSCEF Doc No. 5, amended complaint, exhibits Q1-Q2). The data provided regarding how many of these families have at least one child under 18 seems to entirely contradict the 67,522 figure and the assertion that 95% of these families have at least one child under 18 (id., exhibits R1-R6).

Footnote 9:An administrative determination is also not entitled to deference by courts where the question is one of pure statutory reading and analysis (Morse v Fidessa Corporation, 165 AD3d 61, 70 [1st Dept 2018]).